EASTERN BUILDING & LOAN ASS'N OF SYRACUSE, N. Y., v. WELLING et al.

(Circuit Court, D. South Carolina. July 25, 1900.)

1. RES JUDICATA—PENDENCY OF PROCEEDINGS FOR REVIEW.
   A judgment of the supreme court of a state cannot be pleaded as an adjudication in bar of a subsequent suit in a federal court, where it has been removed for review to the supreme court of the United States by a writ of error, and is there pending and undetermined.

2. SAME.
   Quære, whether, under a system in which code pleading prevails, a defendant who has failed to interpose and avail himself of an equitable defense in an action at law can afterwards obtain relief in equity by original proceeding.

In Equity. On rule to show cause why a restraining order previously granted should not be continued.

This is a bill filed for the foreclosure of a mortgage given by Lawrence S. Welling and Marion Bonnoitt to the Eastern Building & Loan Association of Syracuse, N. Y. The bill, after the usual averments as to persons and citizenship, alleges: That complainant is a building, mutual loan, and accumulating fund association, organized under the laws of the state of New York for cor-

porations of that character, with certain by-laws, rules, and regulations binding upon the corporation, its stockholders and members, and all persons contracting with it, and which are incorporated in, and printed upon, and form a part of the several stock certificates in the corporation, and in those issued to the defendants in this suit. That on 28th January, 1891, defendants made application to complainant for 50 shares of installment capital stock of complainant, and so became subscribers thereto, and at the same time agreed to abide by all the terms, conditions, and by-laws contained or referred to in the certificate, and comply with all rules and regulations of the corporation. That the application was received and accepted and the certificates of stock issued to defendants in the state of New York. That on 8th April, 1891, defendants, as members and stockholders in said corporation, applied in writing for an advance of $5,000 by way of loan for 6½ years, to bear interest at the rate of 5 per cent. per annum, and a premium of 5 per cent. per annum, and as security for said loan or advance to them as stockholders to give a mortgage of the real estate described in the application. That this application was considered and granted by the board of directors of the corporation on 27th April, 1891, upon certain conditions precedent, in performance of which defendants made a further application in writing to the complainant, and thereby expressly bound themselves to comply with the charter and by-laws of the corporation and all requirements of its board of directors. That at the same time defendants delivered to the corporation a certain mortgage to indemnify and secure the corporation for the advance of the $5,000, the same representing the par or maturity value of the shares of stock, the said mortgage having been executed in pursuance of the application for the advance, and in pursuance of and subject to the articles of incorporation and by-laws of the corporation and the laws of the state of New York. The bill then describes the lands mortgaged, which are situate in the county of Darlington and the state of South Carolina. That at the same time, and by way of collateral, defendants assigned to complainant their certificates of stock, upon which certificates their monthly dues or installments only had been paid, leaving the defendants bound to pay on said stock monthly dues of $37.50 until said stock attained its par value. That at the time of the execution of this mortgage the officers of the corporation were of the opinion that the shares of stock held by defendants would attain their par value in 78 months, which estimate was not authorized or guarantied by the articles of incorporation, nor by its by-laws, nor by the laws of the state of New York; and that these officers, without such authority, undertook to accept from defendants 78 notes, payable from month to month, extending over a period of 78 months from date of the mortgage, 75 of which notes were for the sum of $79.20 each, and three of them for the sum of $41.70 each, the first maturing on or before the last Saturday in May, 1891, and the last maturing on the last Saturday in October, 1897; these notes being for payment of dues and premium only, and in no sense applicable to the principal of the loan or advance. Any other construction of the transaction would not bind the corporation, but would be ultra vires under the articles of incorporation, the by-laws, and the laws of New York. That defendants, by their mortgage, bound themselves to pay the said 78 notes, and also bound themselves, or intended to bind themselves, to faithfully meet and discharge all the obligations as members and stockholders in the corporation, and particularly to pay to the corporation from month to month, by way of installments, dues, or calls, $37.50 per month on their shares, until such stock should attain its full par value. That defendants paid all of the notes but one, and tendered payment of that one,—the last,—but only on condition that the complainant should then consider the mortgage satisfied and discharged. That this complainant refused to do, because, although the notes were paid, no part of the advance had been repaid. That the true contract between the parties was the repayment of the full sum of $5,000 advanced; the premium at the rate of 5 per cent. per annum and interest at the same rate per annum to continue until the said advance was paid in full; the payment of the monthly calls of $37.50 each until the stock was paid in full to its par value; the payment of all fines, penalties, and obligations provided in the by-laws. That by mistake of both complainant and defendants the mortgage did not express the full contract, but is defective in particulars stated, and the bill prays that

103 F.—23

these mistakes be now corrected. That there has been a breach of the condition of the mortgage on the part of defendants. The bill then recites: That the defendants, upon the refusal of complainant to satisfy the mortgage, brought an action against complainant in the court of common pleas of the state of South Carolina sitting in the county of Darlington, under an act of the legislature of the said state giving a cause of action and damages to any mortgagor who has satisfied his mortgage against any mortgagee who, after such satisfaction, shall for three months neglect or refuse to enter such satisfaction on record. That complainant duly appeared and defended said action. That its defenses were overruled at nisi prius, and that on appeal to the supreme court the appeal was dismissed, and the judgment of the court below and the verdict therein were confirmed. That both of these courts based their conclusions upon the sole ground that the only matter before them was the construction of the mortgage, and the effect upon the mortgage of the payment of the 78 notes mentioned therein; but the meaning, construction, and effect of said notes and of the contract between the defendants and the complainant were not considered adjudicated, or determined by either of the said courts, nor were the debts and obligations of defendants as stockholders in and members of complainant corporation adjudicated or determined. That by reason of the judgments of the said courts the complainant has been denied the equal protection of the laws of the state of South Carolina, has been and is about to be deprived of its property without due process of law, the obligation of its contract has been impaired, and the complainant denied the rights, privileges, and immunities to which it is entitled under the constitution of the United States. That under these decisions complainant has been deprived of its right under this constitution to have full faith and credit given to the contract between it and defendants, and that said decisions do not give full faith, credit, and effect to the public acts, records, and judicial proceedings of the state of New York, to which complainant is entitled under the constitution of the United States and the Revised Statutes of the United States (section 905). That defendants claim that under said judgment their mortgage is fully paid and satisfied. That complainant, being advised that the said judgment is not conclusive or binding, has sued out a writ of error thereto to the supreme court of the United States, and has issued and served citation thereon, with an order of supersedeas, and, notwithstanding this, defendants claim that their mortgage is satisfied and released. The prayer of the bill is, among other things, that the rights claimed by complainant be established; that it be ordered, adjudged, and decreed that the judgment obtained in the state court was rendered and obtained through error, fraud, and mistake, and in violation of the constitutional rights of complainant; that the mortgage be reformed, and any entry of satisfaction thereon be vacated. There is also a prayer for a temporary restraining order until the final hearing of the cause. To this bill the defendants filed a demurrer, a plea, and an answer. The ground of demurrer is that by the bill of complaint it appears that the judgment of the court of common pleas for Darlington county, affirmed by the judgment of the supreme court of South Carolina, is a bar to the relief sought in the bill of complaint; and that complainant, evidently by reason of this, has not made or stated such a case as entitled it in a court of equity to the relief sought. The plea sets up in detail the petition for writ of error and assignments of error on the appeal to the supreme court of the United States. The answer replies to the allegation of the bill as to the contracts alleged to have been made by defendants, the execution of the mortgage, and the mistake alleged to exist therein. At the hearing complainant moved to strike out the demurrer and plea, or, at the least, to put defendants to their election, claiming that they went to the whole bill. Hayes v. Dayton (C. C.) 8 Fed. 702. The motion was overruled. It does not appear that either the demurrer or plea is to the whole bill. And if, perchance, the answer may extend to some part of the same matter as may be covered by the demurrer or the plea, neither of them can be held bad under rule 37 in equity. The question now before the court is, shall the restraining order heretofore issued be continued?

Russell & Winslow and Mordecai & Gadsden, for complainants. Mitchell & Smith, for defendants.

SIMONTON, Circuit Judge (after stating the facts). In response to the rule to show cause, the defendants have interposed a demurrer, a plea, and an answer,—the demurrer because the controversy is res judicata; the plea in aid of the demurrer, setting out the assignments of error to the judgment of the supreme court of South Carolina, and so showing that the controversy in the state court is the same as is now set up in this court; and the answer putting in issue matters of fact alleged in the bill, specially that the mistake now relied upon was not mutual. The defendants insist that the controversy between them and the complainant has already been heard in the courts of South Carolina, that these courts have determined the controversy adversely to the complainant, and that so it is res judicata. Assuming, for the sake of argument, that the controversy set up in this bill of complaint is the same as that which was agitated in the proceedings in the state court between these same parties, it cannot be said that the question is res judicata. The pleadings disclose the fact that the final judgment of the state supreme court has been removed by writ of error into the supreme court of the United States, and that it awaits adjudication in that court. Were it now held that the issue is res judicata,—a question finally settled beyond controversy,—the decision of the supreme court may perhaps be anticipated, or its conclusion be antagonized. No controversy can be treated as res judicata until it has been finally discussed and decided in a court of last resort, or the result has been acquiesced in without resort to such a tribunal. But is the controversy which the complainant now seeks to make the same which was heard and decided in the suit in the state courts? The bill alleges that the contract by way of mortgage, which was the issue in the case in the state courts, was not the real contract between the parties; that it was entered into in mutual mistake, and by reason thereof did not express the full intent and purpose each of the contracting parties had in mind; that the whole transaction, with the printed and written documents attending it, shows that the real contract between the parties—that which each intended to make—was that the mortgage should not only secure the notes mentioned in it as given for the advance and the premiums and interest upon it, but that it should also secure the promises and obligations assumed by the present defendants, borrowing stockholders, as stockholders in the complainant association; that the mortgage as executed, in attempted compliance with the negotiations for the advance, failed to disclose this mutual purpose, and, on the contrary, was open to the construction that it was confined to the payment of the notes given at the time; that the taking of these notes, in itself, by the agent of the corporation, and the apparent conclusion drawn therefrom that the payment of the notes would satisfy the mortgage, were wholly unauthorized, and were in plain contravention of the charter of the lending corporation and its by-laws and of the written acknowledgments and contracts of the defendants, borrowing stockholders themselves. The action in the state court was an action at law. It was tried before the court with a jury. The verdict was reached wholly as in a case at law. No equitable defense was interposed, and no affirmative relief was asked,

by the defendant in that action. The equities set up in this bill were not introduced, and, it is alleged, could not have been, and in fact were not, considered under the issues made in the pleadings. It goes without saying that this court would not presume to sit in judgment upon the decision of the state court; that it would not and cannot listen to any prayer for relief based on alleged errors or irregularities in the state court; that it will not express any opinion whatever as to the result of the case in the state court. But a question is made in the present case whether this court, after the trial of the cause in the state court, will proceed to hear and adjust the equities between the parties which were not presented or decided in the state court, and, if it be determined that there is an equity in favor of the complainant, will set it up, and grant relief notwithstanding the judgment of the state court. The Code of Civil Procedure of South Carolina permits equitable defenses in an action at law. And it may be that a defendant who can interpose an equitable defense, and does not do so, will be precluded from resort to the equity side of the court for the relief which he could have had, and which he has omitted or neglected to ask in the law case. The defendants, in their return, urge this consideration. "A judgment is not only conclusive as to what was actually determined respecting the demand, but as to every matter which might have been brought forward and determined respecting it." Davis v. Brown, 94 U. S. 428, 24 L. Ed. 204. In order to make a full answer to the complaint in the state court, it was necessary that the defendant in that suit, the present complainant, should file a cross complaint seeking reformation of the mortgage upon the ground of the alleged mistake. It could not have been obtained in any other way. This was exclusively a matter for a court of equity, and wholly without the jurisdiction in a law case. Besides, it was not imperative upon the defendant to take this course. It could have litigated the issues at law, and could afterwards seek relief in equity. This appears to be the rule when the jurisdiction in law and in equity are distinct, and it would seem to be the rule where code practice prevails. Botsford v. Wallace (Conn.) 44 Atl. 10; Bush v. Merriman, 87 Mich. 260, 49 N. W. 567; Hawkins v. Wills, 1 C. C. A. 339, 49 Fed. 506; Reynolds v. Lincoln, 71 Cal. 183, 9 Pac. 176, 12 Pac. 449; Witte v. Lockwood, 39 Ohio St. 141. Certainly, under code pleading, a defendant having a counterclaim, and not using it as a defense, is not precluded from a separate action upon his counterclaim. Roach v. Privett, 90 Ala. 391, 7 South. 808, 24 Am. St. Rep. 819. And it would seem that the same rule applies to any defense which may be set up in the nature of a counterclaim. Uppfalt v. Woermann, 30 Neb. 189, 46 N. W. 419. This will be a matter proper for consideration if the supreme court of the United States confirms or declines to disturb the judgment of the state court. For the present the point is not decided in this court, and it is considered simply in reaching a conclusion as to the continuing or dissolving the existing restraining order. This is the sole question, and it is addressed to the discretion of the court. In view of all the circumstances, the restraining order will be continued until the cause can be heard on a full hearing.